UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RICHARD JOHN SCHALL,

                  Plaintiff,                 Case No. 2:21-cv-75

v.                                   Hon. Hala Y. Jarbou

CONNIE HORTON, et al.,

                  Defendants.

_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Horton, MacDowell, Smith, and Barbierz.

**Discussion**

**I.       Factual Allegations**

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility.  Plaintiff sues Warden Connie Horton, Resident Unit Manager T. Corey-Spiker, Acting Assistant Deputy Warden J. Miller, Nurse Amy MacDowell, Nurse Tristina Smith, and Prisoner Counselor C. Balbierz.

Plaintiff alleges that on October 8, 2020, he told Defendant Balbierz that his "secure pack" had been taken and that he needed protection.  Plaintiff was then placed in protective segregation.  The next day, Defendant Miller told Plaintiff to go to general population and face his fears like a man.  Plaintiff refused and Defendant Miller stated that he was going to write a misconduct ticket.  Defendant Corey-Spiker then came to Plaintiff's cell and gave him a direct order to go to Round Unit in the general population.  Plaintiff complied.

On October 10, 2020, Plaintiff was seriously assaulted by another prisoner with a weapon, which resulted in a significant injury.  Plaintiff was evaluated by Defendant Smith, who stated that Plaintiff needed to go to the hospital.  Plaintiff was later placed in protective segregation.  On October 11, 2020, Plaintiff saw Defendant MacDowell, who refused to change the bandages behind Plaintiff's ear.  Plaintiff claims to suffer from constant headaches and occasional blackouts.  Plaintiff filed a grievance regarding his situation, which was denied.  Plaintiff appealed the denial, to no avail.

Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment.  Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.     Respondeat superior

Initially, the Court notes that Plaintiff fails to make specific factual allegations against Defendant Connie Horton, other than his claim that she is the warden at URF. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Horton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Horton.

## IV.     Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

4

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an

"objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the

conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

7

intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that Defendant MacDowell violated his Eighth Amendment rights when she refused to change the bandages behind Plaintiff's ear on October 11, 2020, the day following his assault and initial treatment. Plaintiff fails to allege facts showing that there was a serious medical need to have his bandages changed on that date. The mere fact that Defendant MacDowell did not change Plaintiff's bandages one day after they were applied does not rise to the level of an Eighth Amendment violation. Therefore, Plaintiff's claim against Defendant MacDowell is properly dismissed.

The only allegations against Defendant Smith are that she checked Plaintiff after the assault and determined that he needed to go to the hospital. These allegations indicate that Defendant Smith was the opposite of deliberately indifferent to a serious medical need. Rather, they show that Defendant Smith recognized Plaintiff's need for emergency medical treatment and took action to obtain such treatment. Therefore, Plaintiff's Eighth Amendment claim against Defendant Smith is properly dismissed.

The Eighth Amendment also grants inmates a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Nevertheless, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Reedy v. West*, ___ F.3d ___, 2021 WL 710909, at *3 (6th Cir. Feb. 24, 2021) (quoting *Farmer*, 511 U.S. at 833–34 (citations and internal quotation

marks omitted)).  In order to state a failure-to-protect claim, a plaintiff must demonstrate (1) that

he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm,"

*Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate

safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable

measures to abate it.'"  *Reedy*, 2021 WL 710909, at *3 (quoting *Farmer*, 511 U.S. at 829, 834,

847); *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing whether

knowing placement of a small, transgender female in a unit with a known predatory inmate

amounted to deliberate indifference).  In establishing the objective prong, although a prisoner does

not need to prove that he has been the victim of an actual attack to bring a personal-safety claim,

he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29

F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a

sufficient inferential connection" between the alleged violation and inmate violence to "justify a

reasonable fear for personal safety.")

Plaintiff alleges that Defendant Balbierz interviewed Plaintiff on October 8, 2020,

and sent him to protective custody after he informed her of his need for protection.  Nowhere in

his complaint does Plaintiff allege facts showing that Defendant Balbierz was deliberately

indifferent to Plaintiff's need for protection.  Therefore, because the conduct of Defendant Balbierz

does not constitute an Eighth Amendment violation, Plaintiff's claim against Defendant Balbierz

is properly dismissed.

Plaintiff claims that both Defendant Corey-Spiker and Defendant Miller ordered

him to go to the general population, despite knowing that Plaintiff was at risk of being assaulted.

The Court concludes that these allegations are sufficient to state an Eighth Amendment claim

against Defendants Corey-Spiker and Miller.

9

**V.       Pending motion for appointment of counsel**

Plaintiff has filed a motion requesting a court-appointed attorney.  Indigent parties

in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich.*

*Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th

Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's

discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist.*

*Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional

circumstances.  In determining whether to exercise its discretion, the Court should consider the

complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to

prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has

carefully considered these factors and determines that, at this stage of the case, the assistance of

counsel does not appear necessary to the proper presentation of Plaintiff's position.  Plaintiff's

request for appointment of counsel (ECF No. 3) is therefore properly denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the

Court determines that Defendants Horton, MacDowell, Smith, and Barbierz will be dismissed for

failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff's Eighth Amendment claims against Defendants Corey-Spiker and Miller remain in the

case.

An order consistent with this opinion will be entered.

Dated:   May 10, 2021                          /s/ Hala Y. Jarbou
                                               HALA Y. JARBOU
                                               UNITED STATES DISTRICT JUDGE